UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

FLORENCE DIVISION

| | |
|---|---|
| GINA TRAHEY, | ) Civil Action No.: 4:22-cv-01567-<br>)   RBH-TER<br>) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER**<br>) |
| GRAND STRAND REGIONAL<br>MEDICAL CENTER/HCA HEALTHCARE, INC.<br>PARALLON, and CYNTHIA HILTON, | )<br>)<br>) |
| Defendant. | )<br>) |

    Pending before the Court is Defendants' motion to dismiss. ECF No. 5. This matter is before the Court with the Report and Recommendation ("R&R") of United States Magistrate Judge Thomas E. Rogers, III, who recommends that the court grant Defendants' motion to dismiss Plaintiff's causes of action for wrongful termination, negligent supervision, intentional infliction of emotional distress, and slander and deny Defendants' motion to dismiss as to Plaintiff's cause of action for tortious interference with contract.[1] ECF No. 17. Plaintiff filed objections to the Magistrate Judge's R&R, ECF No. 17, and Plaintiff filed a Reply, ECF No. 18. The Court has reviewed all filings and adopts the Magistrate Judge's recommendation to dismiss the wrongful termination in violation of public policy, intentional infliction of emotional distress, and slander claims as well as to deny Defendants' motion to dismiss Plaintiff's claim of tortious interference with contract. However, this Court respectfully declines to adopt the Magistrate's recommendation as to Plaintiff's action for negligent supervision and denies Defendants' motion to dismiss that cause of action. Therefore, Defendants' motion to

---

    [1]    This Magistrate Judge issued the R & R in accordance with U.S.C. § 636(b) and Local Civil Rule 73.02(B)(g) (D.S.C.).

1

dismiss is granted in part and denied in part.

## Background

The R&R adequately sets forth the factual background of this case. However, to briefly summarize, Plaintiff claims in her Second Amended Complaint that she was wrongfully terminated in July of 2021 because she internally reported alleged ethical and legal violations of Grand Strand Regional Medical Center/HCA Healthcare, Inc. Parallon. Further, Plaintiff's amended complaint details Plaintiff's interactions with her supervisor, Defendant Cynthia Hilton, and contends that Defendant Hilton bullied, harassed and yelled at Plaintiff, and that Hilton also spread falsehoods which eventually interfered with Plaintiff's employment. Plaintiff's amended complaint asserts causes of action for wrongful termination in violation of public policy, negligent supervision, intentional infliction of emotional distress, slander, and tortious interference with contract.

The Magistrate Judge recommended that Defendants' motion to dismiss be granted as to the claims of wrongful termination in violation of public policy, negligent supervision, intentional infliction of emotion distress and slander, but denied as to the motion to dismiss the claim for tortious interference with contract. The undersigned agrees, with the exception of denying Defendants' motion to dismiss Plaintiff's action for negligent supervision.

## Standard of Review

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber,* 423 U.S. 261, 270-71 (1976). The Court must engage in a de novo review of those portions of the R&R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.

1982). In the absence of specific objections to the R&R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199-200 (4th Cir. 1983).

### Rule 12(b)(6) Standard

To Survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. V. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (citing Fed. R. Civ. P. 8(a)(2)); *United States ex rel. Taylor v. Boyko*, No. 20-1661, 2022 WL 5336802, at *6 (4th Cir. June 29, 2022). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). The district court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"; however, it must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. V. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

### Discussion

Plaintiff objects to the R&R's dismissal of Plaintiff's causes of action of wrongful termination in violation of public policy, negligent supervision, intentional infliction of emotional distress, and slander.

**A. Wrongful Termination in Violation of Public Policy**

As correctly stated in the R&R, South Carolina law explicitly provides for actions of wrongful termination in violation of public policy "where the employer (1) requires the employee to violate the law, or (2) the reason for the employee's termination is itself a violation of criminal law." ECF No. 16 at 6; *Lawson v. South Carolina Dep't of Corrections*, 340 S.C. 346, 349, 532 S.E.2d 259, 260 (2000). South Carolina Courts have consistently prefaced opinions declining to further extend the public policy exception beyond these two scenarios with a concession that alternative scenarios may fit within the exception. *Id.* at 14; *Barron v. Labor Finders of S.C.*, 393

3

S.C. 609, 616-17, 713 S.E.2d 634, 638 (2011); *McNeil v. S.C. Dep't of Corr.*, 404 S.C. 186, 192, 743 S.E.2d 843, 846-47 (Ct. App. 2013). The South Carolina Supreme Court's hesitation to identify further scenarios stems from an acknowledgment that public policy is typically rooted in proclamation by the General Assembly, "the courts assume this prerogative only in the absence of legislative declaration." *Barron*, 393 S.C. at 616-17; *see Culler v. Blue Ridge Electric Co-op., Inc.*, 309 S.C. 243, 422 S.E.2d 91 (S.C. 1992); *see also Taghivand v. Rite Aid*, 411 S.C. 240, 244, 768 S.E.2d 385, 387 (2015) (the South Carolina Supreme Court will "exercise restraint when undertaking the amorphous inquiry of what constitutes public policy"). While the courts may assume such a prerogative, the South Carolina Supreme Court has determined that it is "well settled that a state has no public policy, properly cognizable by the courts, which is not derived or derivable by clear implication from the established law of the state, as found in its Constitution, statutes, and judicial decisions." *Weeks v. New York Life Ins. Co.*, 128 S.C. 223, 122 S.E. 586, 587 (1924).

  Plaintiff objects to the R&R, arguing she was wrongfully terminated in violation of public policy because she was instructed to violate the law. ECF No. 17 at 5. This Court disagrees. Plaintiff roots her objection in this claim, yet, her complaint fails to set forth an instance in which she was forced to choose between "her livelihood and obedience to the law of the State," nor does it indicate she was ever instructed to violate the law. *See Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 225, 337 S.E.2d 213, 216 (S.C. 1985) (Court found conditioning an employee's employment on violation of the law, specifically, disregarding a subpoena, clearly invoked the public policy exception as the employee was confronted with "choosing between her livelihood ... and obedience to the law of the state.") Rather, Plaintiff alleges that Defendant took a retaliatory action to terminate Plaintiff after she, on several occasions, filed internal reports of Defendant's violation of "the law, HIPPA concerns, Ethics and Compliance concerns and discrimination." Sec. Am. Compl. ¶¶ 41-43, 54, 76. Alleged retaliatory action of this nature does not support a claim for wrongful termination in violation of public policy.

  Plaintiff has failed to allege sufficient facts to state a claim to relief for wrongful termination in violation of public policy that is plausible on its face. Plaintiff has not alleged that

Defendant required her to violate the law. Furthermore, Plaintiff has not presented a claim that her termination itself was a violation of criminal law. Instead, Plaintiff has sought for this Court to delineate Plaintiff's scenario as one of the "alternative scenarios" to which the South Carolina Supreme Court has left the door open. Plaintiff has made this argument by emphasizing that she was wrongfully terminated due to her filing of internal reports regarding "violations of the law, HIPPA concerns, Ethics and Compliance concerns and discrimination." Sec. Am. Compl. ¶ 76. Plaintiff presents these facts and the cause of action without directing this Court to any "public policy" established in statute, Constitutional provision, or judicial decision. This Court is in essence being asked, without any specific direction, to "assume the prerogative" of the legislature to identify public policy, an "amorphous inquiry" that mandates this Court to "exercise restraint." *See Taghivand*, 411 S.C. at 244.

This Court must undertake to exercise restraint and look to the language of statute, constitution, and judicial law to determine if the public policy exception should be expanded to cover a scenario where an employee internally reports violations of law made by her employer. The Plaintiff does not allege that she was legally required to file these internal reports, nor does she point to a statutory, constitutional, or judicial provision which favors her activity as public policy.[2] Thus, this Court is inclined to agree with the Magistrate Judge's R&R. Additionally, this Court's concurrence with the R&R's grant of Defendants' motion to dismiss as to the cause of action for wrongful termination in violation of public policy, is consistent with the findings made by another court within this District. *See Desmarais v. Sci. Rsch. Corp.*, 145 F. Supp. 3d 595, 600 (D.S.C. 2015) (declining to extend the recognized bounds of South Carolina's public policy exception to an employee claiming he was wrongfully terminated because he reported his employer's violation of FAA regulations.)

**B. Negligent Supervision**

---

[2] Even in an instance where a Plaintiff points to a statute, the Court will look to the plain language and to the definite statements of the General Assembly. *See Taghivand*, 768 S.E.2d at 387 (where a Plaintiff was terminated, allegedly due to reporting criminal activity at the workplace, and the court refused to read public policy into the plain language of a statute that lacked a "definite statement from the General Assembly that the reporting of crime should be protected.")

5

At this stage, this Court is inclined to allow the Plaintiff's negligent supervision claim to survive Defendants' motion to dismiss, as it likely falls outside of the exclusivity provision of the South Carolina Workers Compensation Act (SCWCA). The linchpin of the Magistrate Judge's recommendation is the exclusivity provision of the SCWCA, S.C. Code Ann. § 42-1-540, and its grant of exclusive original jurisdiction to the South Carolina Workers' Compensation Commission (SCWCC). ECF No. 16 at 8-9. While deciding if the exclusivity provision applies is certainly a necessary analysis in order to arrive at allowing this Court to hear a claim for negligent supervision, attempting to conduct the analysis may be convoluted, especially if full address is given to the murky arguments presented by both sides.[3] Assuming that this Court found in Plaintiff's favor on the issue of exclusivity, this Court is prone to allow this claim to survive the motion to dismiss due to the open question of whether or not Defendant Hilton was acting within her scope of employment. Any argument related to negligent supervision may be raised at the summary judgment stage.

Plaintiff generally alleges injury to reputation under a negligent supervision theory in ¶ 105 of her Second Amended Complaint by incorporating Paragraphs one (1) through one hundred and four (104). It seems to follow, considering ¶¶ 46-49, 86-89, 95, 107, 112-114, that the Plaintiff's theory under negligent supervision is premised on a set of facts where Defendant Hilton was continually publishing false statements about the Plaintiff to hasten Plaintiff's termination. Further, these paragraphs paint a scenario where Defendant Hilton's employer was notified that their employee was making false, injurious statements and did nothing to prevent further statements from being made. The culmination of these instances resulted in Plaintiff being painted in a false light, injuring her reputation, and ultimately engendering Plaintiff's termination.

---

[3] While Plaintiff admits that the exclusivity provision grants the SCWCC original jurisdiction on claims of personal injury, Plaintiff alleges suffering injury to reputation, and that such an injury is not a "personal injury." Therefore, Plaintiff claims her action, pursuant to *Dockins v. Ingles Markets, Inc.,* falls outside of the purview of the SCWCA, S.C. Code Ann § 42-1-540. *See* 306 S.C. 287, 411 S.E.2nd 437, 438 (1991). In addressing this issue, the Court is inclined to point both parties to *Loges v. Mack Trucks, Inc*., a South Carolina Supreme Court decision explicitly stating that in a negligent supervision of a coemployee action, a slander claim resulting in injury to reputation **will not** be barred by the exclusivity provision. *See* 308 S.C. 134, 417 S.E.2d 538 (1992).

Viewing the referenced paragraphs in a light most favorable to the Plaintiff, while accepting her factual allegations as true[4], while certainly attenuated, presents a plausible claim that both *Loges* and *Dockins* detail as falling outside of the exclusivity bar of the SCWCA. *See Loges*, 308 S.C. at 136-37; *Dockins*, 306 S.C. at 288-89.

In proceeding beyond the exclusivity bar, Plaintiff identifies that "an employer may be liable for negligent supervision if the employee intentionally harms another when the employee: (1) is upon the premises of the employer, or is using a chattel of the employer, (2) the employer knows or has reason to know that he has the ability to control his employee, and (3) the employer knows or should know of the necessity and opportunity for exercising such control." ECF No. 8 at 13, citing to *Degenhart v. Knights of Columbus*, 309 S.C. 114, 420 S.E.2d 495 (1992). These are the correct elements for a claim of negligent supervision when an employee is *acting outside the scope of her employment*. In a scenario where an employee is not acting outside of her scope of employment, the elements applicable to a negligent supervision claim are those identified by Defendant, the standard negligence elements.[5] ECF No. 5 at 9; ECF No. 19 at 8. As identified by Defendant, "to prove a negligence claim, a plaintiff must show (1) the defendant owed him a duty to do or not to do any of the things alleged, (2) the defendant breached this duty, (3) the plaintiff was injured, and (4) the defendant's breach of duty proximately caused this injury." *Parsons v. Smith*, No. 2015-UP-403, 2015 WL 4755608, at *2 (S.C. Ct. App. Aug. 12, 2015).

As discussed above, the R&R recommended dismissing Plaintiff's negligent supervision action using the SCWCA exclusivity provision. Therefore, the R&R did not reach the analysis of whether or not Defendant was acting within her scope of employment, and which elements would be applicable to Plaintff's negligent supervision claim. Nonetheless, should the Magistrate Judge have reached an analysis of the applicable elements, both Plaintiff's and Defendants' relevant filings would have left the Magistrate Judge scoring a bout in which neither Party left

---

[4]*See infra* **Rule 12(b)(6) Standard**.

[5]*See James v. Kelly Trucking Co.*, 377 S.C. 628, 631, 661 S.E.2d 329, 331 (2008) (Discussing that negligent supervision is a claim of direct liability, such an action is predicated "on the employer's own **negligence**.").

their corner. Both Plaintiff and Defendant skip right to an elemental analysis without addressing whether or not Defendant Hilton was *acting within the scope of employment*. Thus, this Court is inclined to urge the Parties to address this issue and partake in presenting their respective elemental analysis at the summary judgment stage. In doing so, it must not be forgotten that only injury to Plaintiff's reputation will be considered as a result of the operation of the SCWCA exclusivity bar. Therefore, the Defendants' motion to dismiss Plaintiff's negligent supervision claim is denied. The Court respectfully rejects the Magistrate Judge's recommendation on Plaintiff's negligent supervision claim.

## C. Intentional Infliction of Emotional Distress

As set forth in the R&R, to recover for intentional infliction of emotional distress, a Plaintiff must establish:

(1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct;

(2) the conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;"

(3) the actions of the defendant caused plaintiff's emotional distress; and

(4) the emotional distress suffered by the plaintiff was "severe" such that "no reasonable man could be expected to endure it."

*Argoe v. Three Rivers Behav. Health, L.L.C.*, 392 S.C. 462, 475, 710 S.E.2d 67, 74 (2011); *Hansson v. Scalise Builders of S.C.*, 374 S.C. 352, 356, 650 S.E.2d 68, 70 (2007).

Plaintiff objects to the R&R and asserts that the Magistrate Judge "failed to consider the facts" which show that Defendant Hilton "subjected Plaintiff to hostility" and "acted recklessly ... to create the worst working environment possible," leading to intentional infliction of emotional distress. ECF No.17 at 6-8. Plaintiff supports these conclusory statements by merely reciting those paragraphs of her amended complaint that she believes support her claim, paragraphs that she has relied on in prior pleadings, and paragraphs that she claims the "Magistrate failed to consider." ECF No. 17 at 6-8. However, the Magistrate cited to six of the

eleven paragraphs listed in Plaintiff's objections, and incorporated those cited facts into an analysis with which this Court agrees. ECF No. 16 at 10-12. Accordingly, this court overrules Plaintiff's objection and adopts the R&R's recommendation to dismiss a cause of action for intentional infliction of emotional distress, finding that the Magistrate correctly described and applied the law relating to an action for intentional infliction of emotional distress, and that further application to those paragraphs not specifically addressed by the Magistrate would also support dismissal of Plaintiff's action.

The Magistrate's R&R identifies Defendant Hilton's taking of a corrective action, bullying, yelling, harassment, gloating and investigation of employees as activities insufficient to be "*so 'extreme and outrageous' so as to exceed 'all possible bounds of decency*.'" ECF No. 16 at 11. Against the backdrop of South Carolina case law applying these standards, and the Magistrate's analysis, this Court is inclined to agree with the R&R. *See Shipman v. Glenn*, 314 S.C. 327, 443 S.E.2d 921 (Ct. App. 1994) (finding the "callous and offensive" conduct of a supervisor did not rise to a level so extreme and outrageous so as to exceed the possible bounds of decency where supervisor verbally abused and threatened an employee suffering from cerebral palsy with the loss of her job. Supervisor ridiculed the employee's speech impediment and caused her to "become emotionally upset, distressed, and worried" and "physically ill to the point that she had to leave work early that day, caused her to live in constant fear of Glenn and what he might do to injure her or harm her career, and adversely affected her personal life and her ability to function in her job."); *Wright v. Sparrow*, 298 S.C. 469, 381 S.E.2d 503 (Ct. App. 1989) (finding that stripping an employee of her authority and accusing her of not following directions after the employer changed how she was to perform her duties, all in a plot to build a case to fire employee, was not so extreme and outrageous as to exceed all bounds of decency); *Smith v. Sam Carbis Sols. Grp., LLC*, No. 416CV02320RBHTER, 2017 WL 874983 (D.S.C. Mar. 6, 2017) (holding that Plaintiff's general allegation that the Chief Operating Officer and a Human Resources representative "verbally abused, harassed and intimated her" did not plausibly support a claim that these supervisors' "conduct was so extreme and outrageous so as to exceed all possible bounds of decency" such that it "must be regarded as atrocious, and utterly intolerable

in a civilized community.")

Now this Court is left to apply the same to the following paragraphs reiterated in Plaintiff's objection to the R&R:

> 28. The Plaintiff returned to the Department at 10:30 am. When the Plaintiff returned, she was informed that Hilton had called and was very harsh and was yelling at employees.
>
> 32. The two new hires who were hired for 32 hours a week had 59 hours of overtime from Wednesday through Saturday due the amount of work, lack of training, lack of person and the overall lack of consideration of Hilton.
>
> 36. On May 10th, Robert Grace the CFO asked the Plaintiff how the roll out was going. The Plaintiff informed Grace of all the problems within the department and the failure of concern from Hilton.
>
> 38. The Plaintiff was specifically informed by Hilton to tweak the schedule and not assist the department on the weekends.
>
> 39. That the Plaintiff was subjected to differential treatment during her employment. Other employees within the department were not subjected to the same criticism, overbearing nature, and harassment that the plaintiff was subjected to.

This Court can understand why the R&R fails to specifically address the factual allegations of these five paragraphs, as the severity of the factual allegations pale in comparison to those of which the Magistrate specifically addressed. Thus, taking the same South Carolina law into consideration, these paragraphs do not present a scenario "so extreme and outrageous so as to exceed all possible bounds of decency" and "regarded as atrocious, and utterly intolerable in a civilized community."

Plaintiff generally alleges that the work environment was the "worst working environment possible," one that "no reasonable person should have to ... deal with," one that caused the defendant to be subjected to "hostility that led to intentional infliction of emotion[al] distress." ECF No. 8 at 16-17, ECF No. 17 at 7-8. Plaintiff presents these statements to craft an argument that there is sufficient factual information to survive a motion to dismiss as the "Plaintiff is not required to present every single fact regarding her case only that it is plausible." While it is true

that Plaintiff is not required to present "every single fact," a claim will only survive a motion to dismiss "[o]nce a claim has been stated adequately, [and has been] supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The dismissal of Plaintiff's claim is not premised on a conclusion that there is insufficient detail of fact. Instead, as discussed herein, the Court concludes that the detail of fact presented by Plaintiff fails to come together to be consistent with a work environment that subjected Plaintiff to "hostility that led to intentional infliction of emotion[al] distress,"[6](ECF No. 17 at 7) as the facts do not plausibly paint a work environment where Plaintiff was subjected to conduct so "extreme and outrageous" so as to exceed "all possible bounds of decency" and regarded as "atrocious, and utterly intolerable in a civilized community." *See Argoe*, 392 S.C. 475. Therefore, this Court overrules Plaintiff's objection and agrees with the Magistrate's recommendation to dismiss Plaintiff's claim for intentional infliction of emotional distress.

**D. Slander**

Upon review of the pleadings, the Magistrate concluded that the Plaintiff's slander claim should be dismissed as a result of a failure to "set forth with specificity what the alleged false statements were or to whom they were made." Despite Plaintiff's objections and her decrees of the failures of the Magistrate, this Court likewise finds that, accepting Plaintiff's factual allegations as true, such facts fail to state a claim for slander that is plausible on its face as the complaint fails to identify particular false statements or to whom they were made. Thus, the Court dismisses Plaintiff's cause of action for slander.

Plaintiff objects to the Magistrate's R&R on the basis that the Magistrate commits an error of law by concluding Plaintiff has failed to plead and that the Magistrate fails to "follow the Standard of Review as set forth by the Court for a Motion to Dismiss" by "fail[ing] and refus[ing] to consider the entirety of the complaint and only center[ing] on paragraphs that the Defendant relies on in their argument." ECF No. 17 at 8-9. The Plaintiff further avows that should this Court

---

[6] While this is not precisely one of the four elements for a claim of intentional infliction of emotional distress, the Court presumes the Plaintiff is making this allegation to generally meet the first two elements for a claim of intentional infliction of emotional distress.

11

consider the entirety of the Complaint, it will find "that the Plaintiff has properly pleaded all elements" for a slander action. *Id*. This Court draws attention to the fact that Plaintiff presents these objections, alleging quite serious failures by the Magistrate, without ever, in her filed objection or in her response to Defendants' motion to dismiss, pointing the Court to specific paragraphs to support her slander claim. ECF No. 1, ECF No. 8 & ECF No. 18. Plaintiff does not specifically object to, or argue as incorrect, the Magistrate's finding that South Carolina law requires Plaintiff to, at a minium, set forth with specificity as to what the alleged false statements were. ECF No. 16 at 14-15; *See McNeil v. S.C. Dep't of Corr.*, 404 S.C. 186, 195, 743 S.E.2d 843, 848 (Ct. App. 2013) (dismissing defamation claim where Plaintiff alleged Defendant "made and published statements that insinuated she was unfit in her business and profession" due to failure to "set forth with any specificity what the alleged false statements were"); *Dombek v. Adler*, No. 2:18-CV-391-RMG, 2019 WL 459019, at *2 (D.S.C. Feb. 5, 2019); *Carson v. Emergency MD, LLC*, No. CV 6:20-1946-HMH, 2020 WL 5077655, at *5 (D.S.C. Aug. 25, 2020); *Heyward v. Careteam Plus*, Inc., No. 4:21-CV-0754-SAL-TER, 2022 WL 406016, at *3 (D.S.C. Feb. 10, 2022).

Accordingly, this Court has reviewed the Magistrate's finding of law and finds no error, and will apply the same to the *entirety of the complaint*. The Court has reviewed the record and finds the following paragraphs of the complaint as most relevant to Plaintiff's slander action: 46-49, 85-91, 94, 95, 113, 124, and 126. ECF No. 1. The greatest details relating to the "false statements" and "lies" that Hilton "published" come in paragraphs 46 and 86, the first of which provides scarce details and at best allows the court to presume that the "false statements" and "lies" relate to statements Plaintiff made regarding Teona Grant and Plaintiff's attempts to promote her. The latter merely provides that Hilton "published false statements regarding the Plaintiff's work performance." Similar to those statements made in *McNeil*, Plaintiff's statements fail to "set forth with any specificity what the alleged false statements were." 404 S.C. at 195. Therefore, upon reviewing the *entirety* of Plaintiff's complaint, Plaintiff's objections are overruled and her slander action is dismissed.

**E. Tortious Interference with Contract**

Neither Plaintiff nor Defendants have filed objections to the Magistrate's R&R as it relates to Plaintiff's cause of action for tortious interference with contract. Therefore, this Court has reviewed the Magistrate's conclusion that Plaintiff has presented sufficient evidence to allege that Defendant Hilton acted outside of her scope of employment, making her a third party against which a tortious interference with contract claim may be brought. ECF No. 16 at 17. The Court has reviewed the Magistrate's R&R for clear error and finds none, thus, the Court adopts the Magistrate's holding that dismissal of Plaintiff's tortious interference with contract claim is inappropriate at this time. *See Diamond* & Camby, *supra* (recognizing a district court can adopt an unobjected-to recommendation without explanation where there is no clear error).

## Conclusion

The Court has thoroughly reviewed the entire record, complaint, the R&R, objections to the R&R, and applicable law. For the reasons stated above and by the Magistrate Judge, the Court hereby adopts the R&R in part as modified herein and **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss for failure to state a claim, ECF No. 5. The Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's actions of wrongful termination in violation of public policy, intentional infliction of emotion distress and slander, but **DENIES** Defendants' motion to dismiss the claims of negligent supervision and tortious interference with contract.

**IT IS SO ORDERED.**

Florence, South Carolina  
March 27, 2023

s/ R. Bryan Harwell  
R. Bryan Harwell  
Chief United States District Judge